IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVELLE RICH, #422641, #3079073       *

Plaintiff       *

v       *       Civil Action No. PX-17-1285

OFFICER DIRON TORAIN,[1]       *
WARDEN FOXWELL,
      *

Defendants
      ***

## MEMORANDUM OPINION

In this Complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff Davelle Rich alleges that Correctional Officer Diron Torrain and Warden Foxwell ("Defendants") violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution while incarcerated at the Southern Maryland Pre-Release Unit ("SMPRU").[2] Defendants have filed a Motion to Dismiss the Complaint, or Alternatively, a Motion for Summary Judgment. ECF No. 16. Defendants' Motion is unopposed.[3] This case is ready for disposition and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons discussed below, Defendants' Motion, construed as a Motion for Summary Judgment, IS GRANTED.

I.     BACKGROUND

Rich contends that on February 4, 2016, he spoke to Warden Foxwell, who was touring the housing unit, about the conditions at SMPRU. ECF No. 1 at 4. Immediately afterwards, Rich was ordered to be transferred to another facility. When Rich questioned why he was being

---

[1] The Clerk shall amend the docket to reflect Officer Diron Torain's first name as stated in Defendants' Motion. ECF No. 16.

[2] On August 11, 2017, Rich was released from incarceration on mandatory supervision. ECF No. 16-19.

[3] The Court provided the opportunity to respond to Defendants' Motion and submit affidavits and exhibits supporting his claims. Rich has not filed a response. ECF No. 17.

transferred "without first some type of hearing," Torain "attacked" him. ECF No. 1 at 5. Rich alleges he suffered injuries to his chest, right shoulder, forehead, eyes, right side of the neck, and other unspecified parts of his body. ECF No. 1 at 5. Rich avers that Torain used excessive force against him, and that Foxwell is also culpable because "…it is obvious that he sent Defendant Torain" to assault Rich. ECF No. 1 at 5. Rich also asserts that Defendants' actions deprived Rich of due process because the force used against him imposed an "atypical and significant hardship" upon him. *Id.* at 5. He asks this Court to award compensatory and punitive damages and unspecified injunctive relief. *Id*. at 3.[4]

Defendants, in response, have submitted two Internal Investigation Division ("IID") Reports concerning the February 4, 2016 incident, both of which concluded that Rich assaulted Torain by punching him in the face. (ECF No. 16-4 at 7; ECF No. 16-5 at 9). Defendants also submit a Serious Incident Report (SIR) prepared after the incident (ECF No. 16-7); sworn declarations from Foxwell, Torain, and eye witness, Officer Amanda Valentin (ECF Nos. 16-11, 16-12, 16-13, 16-14, 16-15, 16-16); Rich's medical and prison records (ECF Nos. 16-8, 16-9, 16-10, 16-17, 16-18); and photographs taken after the incident (ECF No. 16-7 at 22-36).

---

[4] Defendants' exhibits include a copy of Rich's statement written at Brockbridge Correctional Facility on February 5, 2016. ECF No. 16-4 at 53-54. In it, Rich avers that he told Foxwell on February 4, 2016 that SMPRU inmates were "chained inside dorms with padlocks and chains with no restroom," sinks had no pipes or hot water, the fans were covered with dust, and there were no fire extinguishers in his dormitory area. Torain then approached Rich with handcuffs. Rich responded that he had "no problem" putting the cuffs on, but wanted to gather his belongings. *Id*. Torain answered "Nah you should not have told on us," and simultaneously "grabbed [Rich's] hand aggressively." Rich snatched his hand away and began walking away. Torain then tackled Rich and started punching him in his left eye, and then returned Rich was escorted to the holding cell. In the cell, Torain spit and taunted Rich. Rich says he "flipped out and spat back on him. They tried to close the slot but I would not allow them to." Critically, and contrary to the Declarations submitted by Defendants, Rich's statement is not submitted under oath, and is thus inadmissible hearsay not to be considered at the summary judgment stage. Fed. R. Civ. P. 56(c)(4) see *United States v. White,* 366 F.3d 291, 300 (4th Cir. 2004) (unsworn statement does not constitute evidence to be considered to oppose a motion for summary judgment); *Maryland Highways Contractors Ass'n, Inc. v. State of Md*., 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.") The reliability of the statement also undermined by Rich having pleaded guilty to assaulting Torain, a plea that necessarily entails Rich admitting to facts substantiating that he, not Torain, was the aggressor.

Collectively, Defendants' submissions present the following facts. On February 4, 2016, at approximately 12:50 pm, Warden Foxwell was touring the SMPRU when Rich began yelling at him. Rich was "behaving in a manner not consistent with that of an inmate classified to pre-release security" and Foxwell instructed Captain Mallard Hast to transfer Rich to another facility. Foxwell Declaration, ECF No. 16-16 ¶3; Torain Declaration, ECF No. 16-11 ¶ 2; ECF No. 16-4 at 22, 24. Hast directed Torain to place Rich in a holding cell while officers packed Rich's belongings for his transfer. ECF No. 16-4 at 12, 22.

As Torain approached, Rich jumped up from his bunk and attempted to run away. Torain ordered him to stop, but Rich did not comply. When Torain reached out to grab Rich by the arm, Rich punched Torain's right jaw. Officer Valentin witnessed Rich strike Torain on the right side of his face with a closed fist. ECF No. 16-4 at 26; ECF No. 16-13; ECF No. 16-5 at 8. Torain then "bear hugged" Rich to prevent further attack. ECF No. 16-4; ECF No. 16-11 ¶ 2. Other officers arrived to assist. Hast witnessed Torain and Rich "wrestling across the top of a bottom bunk bed." ECF No. 16-4 at 22. Officer Boateng, Captain Hast, and Valentin helped Torain gain control of Rich, handcuff him and place him in the holding cell. ECF No. 16-4 at 12, Torain Declaration, ECF No. 16-11 ¶2. Rich spat at Torain, Boateng, and Martz through the slot in the holding cell. ECF No. 16-4 at 27, 28, 32, 34, 45, 72, 73, 76.

From this altercation, Torain sustained a gash to his right shin. ECF No. 16-4 at 1. Rich suffered redness to his face, forehead, and the back of the neck. ECF No. 14-6 at 1. Contemporaneous photographs of their injuries depict a red gash across Rich's chest and a gash on Torain's leg. ECF No. 16-4 at 40, 43. Renee Walker, R.N. treated Torain for his leg abrasion and Boateng because Rich has untreated Hepatitis C and had exposed Boateng to his saliva when he spat in his cell. ECF No. 16-4.

3

At 2:45 p.m. on February 4, 2016, corrections personnel transported Rich to Brockbridge Correctional Facility (BCF). There, he was seen by medical personnel and placed on administrative segregation pending an adjustment hearing. ECF No. 16-16 ¶4; ECF No. 16-4 at 73, 90. Contemporaneous medical records reflect that Rich's vital signs were normal, he was alert and oriented, his lungs were clear, and there were no signs of acute distress. Rich sustained scratches on his forehead, neck, and chest which were treated. ECF No. 16-4 at 31; ECF No. 16-8 at 2-3.

On Feburary 24, 2016, Rich was criminally charged in the Charles County District Court with second degree assault on Torain. *Id.* at 78-9; ECF No. 16-6 at 106. Rich pleaded guilty to this charge on November 9, 2016 and was sentenced him to one year and one day of incarceration. ECF No. 16-17, ECF No. 16-18. Also on February 24, 2016, Rich was served a Notice of Inmate Rule Violation (NOIRV). ECF No. 16-4 at 12-13; ECF No. 16-9. On March 8, 2016, Rich pleaded guilty to violating rules 100 (engaging in a disruptive act), 101 (assault or battery on staff), 400 (disobeying an order), 405 (disrespect or use of vulgar language). ECF No. 16-9 at 3. Hearing Officer David Igbeare also found Rich guilty after the adjustment hearing of violating inmate rules 312 (interfering with staff performance of duties) and 402 (refusing an order for inmate facility movement). ECF No. 16-9 at 7, 10. Igbeare imposed two 90-day sentences of disciplinary segregation to be served consecutively and revoked 90 days of Rich's diminution or "good time" credits. Warden Foxwell later reduced the disciplinary segregation to two 30-day consecutive sentences. ECF 16-16 ¶ 5; ECF No. 16-9 at 8.

Five days later, on February 29, 2016, Rich's aunt, Tamey Rich, reported to the DPSCS PREA (Prison Rape Elimination Act) Hotline that Rich had been assaulted by several correctional officers on February 4, 2016. ECF No. 16-5 at 1. As a result, an investigation (IID

4

Case No. #16-35-00464) was opened and assigned to Det. Sgt. Kevin Baylin. ECF No. 16-5 at 1, 7. Baylin ultimately determined that Rich had assaulted Torrain and closed the PREA investigation. ECF No. 16-5 at 9.

## II.     Standard of Review

Defendants' motion will be treated as one for summary judgment under Federal Rule of Civil Procedure 56. Defendants have submitted materials outside the original pleadings and Rich was given the opportunity to object or otherwise respond to such evidence. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Accordingly, the Court may, in its discretion, review the motion under the summary judgment standard.

Summary judgment is proper when the moving party demonstrates, that "no genuine dispute as to any material fact" exists when construing all facts and all justifiable inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). A genuine issue of disputed material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). At this stage, the Court must determine whether sufficient evidence exists on to a material fact which requires resolution by the finder of fact at trial. *Id*. at 249. A mere "scintilla of evidence" suggesting a material dispute is not enough to defeat a motion for summary judgment. *Anderson* 477 U.S. at 251-52. Nor does the Court consider bare legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Rather, the submitted evidence

5

must demonstrate that a reasonable trier of fact could find in favor of the nonmoving party. *Matsushita Elec Indus Co v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986).

### III. Analysis

#### A. Excessive Force Claim

Where an inmate alleges that corrections personnel used excessive physical force, the claim is analyzed in the context of the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 7-9 (1992); *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To establish an Eighth Amendment violation, a plaintiff must demonstrate that the prison officials "acted with a sufficiently culpable state of mind (subjective component)" and that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). With respect to the subjective component, the inmate must sustain the heavy burden of demonstrating that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley,* 475 U.S. at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Rich's complaint allegations are too vague and conclusory to meet this burden. Rich generally asserts that he was "attacked" and that Torain's force "<u>was</u> not applied in a good faith

effort, and applied maliciously and sadisticly [sic]" to cause him harm. ECF No. 1 at 4. As pleaded, Rich's legal conclusions couched as factual allegations fail to make out an excessive force claim.

Moreover, Defendants' evidence, when viewed most favorably to Rich, demonstrate that Torain's use of force was justified and responsive to Rich's aggression. Even more probative is Rich's own admission, via his guilty plea, that he assaulted Torrain. In the end, therefore, Rich has not presented sufficient facts to generate a genuine dispute as to his excessive force claim. Defendants are entitled to summary judgment.

### B. Due Process

To succeed on a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Without a protected liberty interest, a plaintiff cannot successfully demonstrate that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). In the prison context, inmates enjoy two categories of protected liberty interests: (1) where a state-created entitlement to an early release from incarceration is implicated. *Bd. of Pardons v. Allen,* 482 U.S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits); or (2) where the inmate has suffered an "atypical and significant hardship" related to "the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. Rich's claims only implicate a potential atypical or significant hardship visited upon him. This is so because an inmate has already "been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano,* 427

U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

Taken in the light most favorably to Rich, none of the Defendants' conduct amounts to a violation of due process. Rich appears to contend that he should not have been transferred to without a hearing. Simply being transferred, standing alone, does not amount to significant or atypical hardship as a matter of law. *Sandin,* 515 U.S. at 484; *McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (recognizing there is no constitutional right to a "particular security or custody status"); *Meachum*, 427 U.S. at 225 (The due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system.").

To the extent Rich asserts his placement in disciplinary segregation for two 30-day periods violates his due process rights, once again Rich has failed to aver facts reflecting that this segregation visited on him an "atypical and significant hardship." *See, e.g., Incumaa v. Stirling*, 791 F.3d 517, 527 (4th. Cir. 2015). Viewing the facts most favorably to Rich, he was involved in an altercation which became the subject of an administrative hearing. He received two 90-day periods of segregation, which was then reduced to two 30-day stints. This period of segregation, standing alone, simply does not implicate due process protections. *See, e.g., Germain v. Bishop*, TDC-15-1421, 2018 WL 1453336, at *12 (D. Md. Mar. 23, 2018) (no due process interest in avoiding 90-day period of segregation, among other punishment); *Reynolds v. Shearin*, DKC-13-2495, 2015 WL 570308, at *5 (D. Md. Feb. 10, 2015) (same, for 60-day period of segregation). Nor does Rich's bare claim that he was subject to "atypical and significant hardship" change the analysis. This is the very bald legal conclusion couched as fact that cannot generate a genuine

8

material dispute.

Further, Rich puts forward no evidence that the surrounding proceedings fell below constitutionally acceptable standards. Generally in prison disciplinary proceedings where an inmate faces the possible loss of diminution or "good time" credits, certain protections must be provided. *See Wolff,* 418 U.S. at 564-66, 592 (stating protections due). Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985). Defendants' submissions, viewed most favorably to Rich, reflect that Rich was afforded satisfactory process. The Court therefore, grants summary judgment in Defendants' favor on Rich's due process claim.

## IV. CONCLUSION

The Defendants' Motion for Summary Judgment is GRANTED. A separate order follows.

/S/
Paula Xinis
United States District Judge